**ISBRANDTSEN COMPANY, Inc.,**
**Plaintiff,**

v.

**FEDERAL MARITIME BOARD et al.,**
**Defendants.**

Civ. No. 1832.

United States District Court
District of Columbia.

March 21, 1958.

John J. O'Connor, Washington, D. C., for plaintiff.

Edward D. Ransom, Gen. Counsel, Edward Schmeltzer, Federal Maritime Board and Maritime Adm'n, Washington, D. C., for defendant.

William Caverly, Washington, D. C. (Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel), for defendant-intervener.

McGARRAGHY, District Judge.

This is a civil action for a declaratory judgment to review a decision of the Federal Maritime Board; (a) to set aside an Order of the Board dated February 29, 1956 dismissing a complaint of the plaintiff Isbrandtsen Company, Inc. against American Export Lines, Inc.; (b) to require the Board to recover from Export all sums paid by the Government to it since September 1, 1952 under subsidy contracts entered into between the Board and Export in accordance with the Merchant Marine Act, 1936, as amended; and (c) to withhold all sums which may be due or become due in the future to Export under such subsidy contracts.

Isbrandtsen alleges that Export entered into Cotton Freight Agreements with twenty-eight foreign-flag carriers and one other American-flag carrier to discriminate against and to exclude Isbrandtsen, an American-flag carrier, from the cotton trade between Alexandria, Egypt, and India and Pakistan by means of an exclusive-patronage deferred-rebate with shippers which Isbrandtsen alleges constituted a violation of Export's subsidy contract with the Board and of Section 810 of the Act, 46 U.S.C.A. § 1227.

Plaintiff's original complaint against Export was filed with the Board on April 10, 1953 and, after extensive hearings, the Board, on February 29, 1956, issued its Report and Order dismissing the complaint.

In its Report and Order of February 29, 1956, the Board reaffirmed a prior determination by it on May 13, 1954 that Export's participation in the Cotton Freight Agreements did not violate Section 810 of the 1936 Act or pertinent sections of Export's subsidy contract.

In reaching this conclusion, the Board pointed out that "The prohibition of Section 810 of the 1936 Act is aimed at preventing the exclusion of American-flag carriers from participation in conferences or agreements among carriers operating between foreign ports. No such exclusion has been shown in this proceeding."

The Board also found that Isbrandtsen is not a citizen of the United States for whom the protection of Section 810 was intended and in this regard, the Board said: "We consider, therefore, that the twelve foreign-flag vessels hereinbefore discussed have been operated in private carriage, and that Isbrandtsen's common-carrier operations on Trade Route No. 18 have been exclusively American-flag. In view of Isbrandtsen's operation of foreign-flag vessels on other trade routes, however, Isbrandtsen is not a citizen of the United States for whom the protection of Section 810 of the 1936 Act was intended."

In addition to making the foregoing findings, the Report and Order of the Board contained an affirmative approval by the Administrator of the Cotton Freight Agreements under Section II–18(c) of the Export subsidy contract, "since the agreements have not been found to be in contravention of the purposes, policy, or provisions of the Act."

Therefore, on the merits, the Board found that the Agreements were not "unjustly discriminatory or unfair" and, further, that the language of the Statute protecting citizens of the United States who operate a common carrier by water exclusively employing vessels registered under the laws of the United States on "any" established trade route from and to a United States port or ports did not apply to Isbrandtsen which concededly does operate foreign-flag vessels on other trade routes even though its common carrier operations on the trade route here in question have been exclusively American-flag.

Following issuance of the Board's ruling, the pending complaint in this Court was filed by Isbrandtsen seeking the relief hereinbefore described. Export was not named as a party but was granted leave to intervene and has filed an answer.

Section 810 of the Act which the plaintiff alleges has been violated reads as follows:

"It shall be unlawful for any contractor receiving an operating-differential subsidy under title VI or for any charterer of vessels under title VII of this Act, to continue as a party to or to conform to any agreement with another carrier or carriers by water, or to engage in any practice in concert with another carrier or carriers by water, which is unjustly discriminatory or unfair to any other citizen of the United States who operates a common carrier by water exclusively employing vessels registered under the laws of the United States on any established trade route from and to a United States port or ports.

"No payment or subsidy of any kind shall be paid directly or indirectly out of funds of the United States or any agency of the United States to any contractor or charterer who shall violate this section. Any person who shall be injured in his business or property by reason of anything forbidden by this section may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Counsel for the plaintiff, the defendant, and the intervenor, have filed exhaustive briefs and made full arguments on the merits of the case involving the correctness of the Board's ruling. The defendant has also moved to dismiss on the grounds that (1) plaintiff is without standing to bring this suit, and (2) the Court is without jurisdiction to grant the relief sought by the plaintiff.

In its reply brief the plaintiff asserts its standing to bring this action in the following language: "The basis of Isbrandtsen's complaint is that it is afforded by Section 810 of the Merchant Marine Act a *statutory* right to be protected from conspiratorial acts by Export, as a subsidized carrier 'acting in concert' with other carriers, in a 'practice' which is 'unjustly discriminatory or unfair' to Isbrandtsen." (Plaintiff's reply brief, page 7.)

The plaintiff relies solely upon the quoted section of the Act and claims that it confers a right entitled to legal protection. However, the legal protection which the Act provides does not confer the remedy which the plaintiff here invokes. It expressly confers upon a person injured by reason of anything forbidden therein the right to sue for treble damages, the costs of suit and a reasonable attorney's fee. It does not confer upon the plaintiff any right or privilege which the plaintiff is entitled to protect by suit against the *Board*. It does not confer any right or remedy against the *Government or its officials*.

Much the same argument now made by the plaintiff was made by the appellants in Tennessee Electric Power Co. v. T.V. A., 306 U.S. 118, 137, 59 S.Ct. 366, 369, 83 L.Ed. 543, in which the Supreme Court stated that the principle invoked by the appellants was "without application unless the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege."

As pointed out, the only right which the plaintiff asserts is a right allegedly founded on a statute, and the only privilege which that statute confers upon the plaintiff is the right to sue for treble damages in the event the plaintiff has been injured in its business or property by reason of anything forbidden by the section.

As was said in Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 875, 84 L.Ed. 1108, "It is by now clear that neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such. * * * Respondents, to have standing in court, must show an injury

or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law."

Applying the foregoing principles to the pending case, it is the opinion of the Court that the plaintiff is without standing to maintain this action.

The defendant further contends that this is an unconsented suit against the United States because it is an attempt to control the disposition of sovereign property and because the administrative action here attacked is not in excess of, but rather is within, delegated statutory authority.

The principal relief sought by the plaintiff is an order to enjoin the Board from continuing to make payment of the subsidy to Export and to require the Board to recover the amount of payments heretofore made to Export.

The plaintiff does not allege that the Board lacked authority to make the determination which is the subject of this action, but plaintiff says that the Board's decision was erroneous. Even if this is true, it would not be outside of the authority of the Board and would not be within the jurisdiction of this Court to enjoin.

The decision of the Supreme Court in Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, is controlling. Other authorities which lead to the same conclusion are: Doehla Greeting Cards v. Summerfield, 97 U.S.App.D.C. 29, 227 F.2d 44; State of Arizona ex rel. Arizona State Bd. of Public Welfare v. Hobby, 94 U.S.App.D.C. 170, 221 F.2d 498; and American Dredging Co. v. Cochrane, 89 U.S.App.D.C. 88, 190 F.2d 106.

The Court is of the opinion that the defendant's motion to dismiss on jurisdictional grounds must be granted and, therefore, the Court does not reach a consideration of the case on its merits.

Counsel for defendant will submit an Order in accordance with the foregoing.